## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRANDON T. WIEGAND,** | : | **CIVIL ACTION NO. 1:19-CV-108** |
| | : | **(Consolidated with 1:17-CV-979)** |
| **Plaintiff** | : | |
| | : | **(Judge Neary)** |
| **v.** | : | |
| | : | |
| **DANIEL DRISCOLL, Secretary,** | : | |
| **Department of the Army,** | : | |
| | : | |
| **Defendant** | : | |

## <u>MEMORANDUM</u>

Plaintiff Brandon T. Wiegand's tenure at the Army Heritage and Education Center ("AHEC") did not end on favorable terms. He asserts he faced disability discrimination as a result of having Asperger's and filed suit against defendant Secretary of the Army ("the Army"). The Army responds there is no dispute of material fact in this case and that it had no obligation to accommodate Wiegand's specific demands. Reviewing the record, the court agrees and will grant the Army's motion for summary judgment.

I. **Factual Background & Procedural History**[1]

Wiegand began his employment with AHEC in October 2010. (Doc. 162 ¶ 1). While he was there, the director of AHEC was Colonel Matthew Dawson. (Id. ¶ 2). Around 2012, Colonel Dawson began a reorganization of the AHEC in order to modernize and streamline the operation. (Id. ¶¶ 3-6). As part of this reorganization, Wiegand's job changed, he was assigned to new raters, and his responsibilities increased. (Id. ¶ 7). Wiegand made the Army aware he has Asperger's Syndrome no later than during the reorganization process. (Id. ¶ 12).

This reorganization did not go smoothly for Wiegand. For example, the Army never updated the official position description—the listing of the essential duties—

---

[1] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." M.D. PA. L.R. 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried. Id. Unless otherwise noted, the factual background herein derives from the parties' Rule 56.1 statements of material facts. (See Docs. 162, 173). To the extent the parties' statements are undisputed or supported by uncontroverted record evidence, the court cites directly to the statements of material facts.

When Wiegand originally filed his response (Doc. 145) to the Army's statement of material facts, he failed to properly follow the Middle District of Pennsylvania's local rules. Specifically, he failed to "respond[] to the numbered paragraphs set forth [by the movant]" and included his own paragraphs, which is not allowed by the rule. See M.D. PA. L.R. 56.1. This court allowed Wiegand to file an amended responsive statement, this time in accordance with the rules. (Doc. 167). While the amended statement, (Doc. 173), no longer contains extra paragraphs, it adds extraneous or irrelevant details. Where he fails to point to a genuine dispute of material fact in regard to the Army's specific claim, the court treats him as admitting to the pertinent fact.

for Wiegand's job. (Doc. 173 ¶¶ 3, 7). After the changes to his job, he also began to

feel stress and anxiety. (Doc. 173-1 at ECF 6). These issues led Wiegand to take paid

medical leave from AHEC in October 2013. (Doc. 162 ¶ 11). Eventually, Wiegand

exhausted his paid leave and switched to FMLA leave. (Doc. 173-1 at ECF 6).

Wiegand remained on FMLA leave until his removal from AHEC on October 24,

2014. (Doc. 162 ¶ 11; Doc. 162-1 at ECF 247-48).

On January 8, 2014, Wiegand submitted an official request for

accommodations from the Army due to his Asperger's. (Doc. 162 ¶ 13). Attached to

this form was a letter from Dr. Christopher Royer, Wiegand's doctor. (Id. ¶ 14). This

letter included a list of accommodations Dr. Royer felt "would be helpful to

[Wiegand]." (Doc. 162-1 at ECF 162). Among other things, these suggested

accommodations included:

- You are likely to struggle more on tasks that require close
  coordination with staff outside of your team, and these situations
  should be minimized whenever possible.

- Whenever possible, care should be taken to minimize or eliminate
  situations in which conflict may be expected (e.g. working with
  individuals who you have had significant conflict in the past). . . .

- Your supervisors should be aware of any potential interpersonal
  conflicts when assigning you group tasks. . . .

- [G]eneral efforts should be made to minimize stress whenever
  possible, and to be clear about expectations and priorities if stress
  is unavoidable. As it is sometimes difficult for you to
  "compartmentalize" situations in your life, it will be important to
  give you time between interactions to reset and get ready for the
  next item or responsibility.

(Id. at ECF 162-63). In Wiegand's request for accommodations, his preference was to be transferred out of AHEC, but in the alternative, he wanted the accommodations suggested by Dr. Royer. (Id. at ECF 48-49).

Beginning the accommodation process, Colonel Dawson met with Wiegand and his wife to discuss Wiegand's request. (Doc. 162 ¶ 17). After that meeting, Colonel Dawson shared with Wiegand's supervisor a list of various accommodations he thought the Army should offer Wiegand and instructed him to provide these to Wiegand. (Id. ¶¶ 19-20). Yet, Wiegand did not return to work. (Id. ¶¶ 24, 27). On February 20, 2014, Colonel Dawson emailed to Wiegand a formal accommodation proposal. (Id. ¶ 27). Four days later, Wiegand rejected this formal proposal. (Doc. 162-1 at ECF 559-61). He reiterated his preference to be transferred out of AHEC. (Id. at ECF 560). If that could not be done, Wiegand requested "[t]he choice of my rater and senior rater." (Id.). If he could not choose his raters, Wiegand said he wanted to be transferred out of AHEC. (Id.).

Colonel Dawson promised to look into Wiegand's requests and was informed he could reassign him internally—not outside of AHEC—to different positions. (Id. at ECF 90; Doc. 162 ¶ 37). However, leadership at AHEC felt reassignment to those positions would not work because, "Wiegand only wanted to work for certain people. He only wanted to be rated by certain people, and was only willing to work

in certain areas." (Doc. 162-1 at ECF 574). Allowing Wiegand this much power over

his supervisors would set a precedent "that is not good for the organization." (Id.).[2]

This led to Colonel Dawson providing another response to Wiegand on

March 4, 2014. (Doc. 162 ¶ 50). That response explained it would be unreasonable to

use "any one person's definition or allegation of 'significant conflict in the past'" to

determine who Wiegand could and could not work with. (Id. ¶ 50a). It additionally

explained internal reassignment was disfavored since those positions "would hold

new stressors, the likelihood of supervisory responsibilities, and continuous routine

collaboration across both the USAHEC team and external agencies." (Id. ¶ 50b).

While the Army did not offer permanent external reassignment, it did offer a

temporary position for 120 days (with the possibility of extension for another 120

days) during which time there would be a search for a permanent external

replacement position. (Id. ¶ 51a, b). By letter dated March 14, 2014, Wiegand again

rejected the Army's offer. (Id. ¶ 59). On May 9, 2014, Wiegand applied for disability

retirement, (Doc. 162-1 at ECF 496), which was approved on November 5, 2015,

(Doc. 162 ¶ 106).

On June 9, 2014, Wiegand filed an Equal Employment Opportunity complaint

alleging the Army failed to appropriately accommodate him at AHEC. (Doc. 1-21 at

ECF 4-5). Reviewing the Army's investigative findings along with his complaint, an

---

[2] Wiegand calls this testimony "not credible" because the person behind this
testimony "was not aware of the essential functions of Wiegand's job." (Doc. 173 ¶
38). Yet, wanting to choose one's supervisors is not dependent on any specific
position and Wiegand does not dispute that he wanted a say in his supervisors.

Equal Employment Opportunity Commission ("EEOC") administrative law judge granted summary judgment in favor of the Army. (Id. at ECF 5). Wiegand then appealed that decision to the EEOC who affirmed on September 28, 2018.[3] (Id. at ECF 6, 8). Wiegand timely appealed the EEOC's decision by filing a complaint in district court on January 17, 2019. (Doc. 1 ¶ 64). This matter has been fully briefed and is ripe for disposition.

## II.    **Legal Standard**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is appropriate if the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is material if resolution of it "might affect the outcome of the suit under the governing law" and genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Mall Chevrolet, Inc. v. General Motors LLC, 99 F.4th 622, 631 (3d Cir. 2024) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). When considering a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. Tolan v. Cotton, 572 U.S. 650, 657 (2014) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970)). The court's duty is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 242-43.

---

[3] The EEOC would need to reissue its decision, which it did on October 19, 2018. (Doc. 1-21 at ECF 2).

There are "two closely related methods for a movant to succeed at summary judgment." <u>Mall Chevrolet</u>, 99 F.4th at 630. "First, under the standard approach, the moving party may produce material facts, established as genuinely undisputed, that entitle it to judgment as a matter of law." <u>Id.</u> (citing FED. R. CIV. P. 56(a)). "Second, under the <u>Celotex</u> approach, a moving party may instead demonstrate that the nonmoving party has not made 'a showing sufficient to establish the existence of an element essential to that party's case *on which that party will bear the burden of proof at trial.*'" <u>Id.</u> (quoting <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986)).

The nonmoving party can defeat a motion for summary judgment by producing evidence to establish a genuine issue of material fact. <u>Anderson</u>, 477 U.S. at 256. The nonmoving party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." <u>Id.</u> The party "must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." <u>Anderson</u>, 477 U.S. at 252. Moreover, if the nonmovant's version of disputed facts is "blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007).

Federal Rule of Civil Procedure 56(c) requires movants and nonmovants alike to support factual assertions by "citing to particular parts of materials in the

record" or otherwise "showing that the materials cited do not establish the absence or presence of a genuine dispute." FED. R. CIV. P. 56(c). Rule 56(e) allows the court to deem undisputed any fact not properly countered by record evidence. See FED. R. CIV. P. 56(e)(2). Local Rule of Court 56.1 undergirds these principles by requiring Rule 56 motions to "be accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." M.D. PA. L.R. 56.1. Local Rule 56.1 further requires the nonmovant to file a responsive statement identifying genuine issues to be tried and mandates that both parties' submissions "include reference to the parts of the record that support the statements." Id.

This court has wide discretion to sanction noncompliance with local rules, including Local Rule 56.1, which serves the important purpose of organizing the summary judgment record and facilitating efficient disposition of Rule 56 motions. See Weitzner v. Sanofi Pasteur Inc., 909 F.3d 604, 613-14 (3d Cir. 2018). Permissible sanctions for failure to strictly comply with Local Rule 56.1 include striking nonresponsive statements of fact or deeming a moving party's statement to be unopposed when not properly controverted. See id.; see also FED. R. CIV. P. 56(e); M.D. PA. L.R. 56.1. In resolving the instant motion, the court has reviewed the parties' statements and has independently considered the entire record.

### III.    **Discussion**

Wiegand argues his complaint raises claims of "failure to forward/provide an approved award, violation of privacy through release of medical information, and failure to file appropriate documents to reflect Wiegand's correct [position

description]" in addition to a failure to accommodate claim. (Doc. 173 at 1 n.2). He further asserts the Army only addressed the failure to accommodate claim in its motion for summary judgment and therefore gave no defense to his other claims. (Id.). However, the Army did in fact address his other claims, albeit, in footnotes. (Doc. 143 at 7 n.2, 20 n.3).

Perhaps the reason the Army contained its arguments to Wiegand's non-accommodations claims is because they can be summarily dealt with. For example, the Army is correct that neither the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*, nor 42 U.S.C. § 1983 creates a cause of action against an instrument of the federal government. 42 U.S.C. § 12111(5)(B)(i) ("The term 'employer' does not include the United States. . . ."); Polsky v. United States, 844 F.3d 170, 173 (3d Cir. 2016) (reaffirming 42 U.S.C. § 1983 is inapplicable to the federal government). Concerning alleged violations of various policies and executive orders, the Army is again correct in pointing out Wiegand has failed to show the abrogation of sovereign immunity necessary to proceed on these claims. See Lane v. Pena, 518 U.S. 187, 192 (1996) ("A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text and will not be implied.") (internal citations omitted). Nowhere has Wiegand pointed to a waiver of sovereign immunity allowing him to challenge alleged violations of Army policy or executive orders. Accordingly, summary judgment must be awarded to the Army on all of the non-accommodation claims.

Turning to accommodation, the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 701, *et seq*, does allow an employee to sue the federal government for certain claims

of discrimination. See 29 U.S.C. §§ 794, 794a. Additionally, the standards used to

determine whether a violation occurred under the ADA are the same under the RA.

29 U.S.C. § 794(d).

As to those standards, an employer violates the RA for failing to

accommodate an employee where:

> 1) the employer knew about the employee's disability; 2) the employee
> requested accommodations or assistance for his or her disability; 3) the
> employer did not make a good faith effort to assist the employee in
> seeking accommodations; and 4) the employee could have been
> reasonably accommodated but for the employer's lack of good faith.

Williams v. Philadelphia Hous. Auth. Police Dep't,[4] 380 F.3d 751, 772 (3d Cir.

2004) (quoting Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 319-20 (3d Cir.

1999)). Additionally, though "'an employer who fails to engage in the

interactive process runs a serious risk that it will erroneously overlook an

opportunity to accommodate a statutorily disabled employee, and thereby

violate the [RA],' failure to engage in the interactive process, in itself, does not

constitute such a violation." Hohider v. United Parcel Serv., Inc., 574 F.3d 169,

194 (3d Cir. 2009) (quoting Deane v. Pocono Med. Ctr., 142 F.3d 138, 149 (3d

Cir.1998) (en banc)). This is because, as explained by the Third Circuit, "[t]he

[RA], as far as we are aware, is not intended to punish employers for behaving

callously if, in fact, no accommodation for the employee's disability could

---

[4] This case, like others cited later in this opinion, dealt with the ADA rather
than the RA. Yet because the same standards apply to the RA as in the ADA
context, 29 U.S.C. § 794(d), these cases are still controlling.

reasonably have been made. Id. (quoting Mengine v. Runyon, 114 F.3d 415, 420 (3d Cir. 1997)).

The Army does not dispute that it knew about Wiegand's disability or that he requested accommodations relating to his disability. (Doc. 143 at 8). It does, however, contend it acted in good faith and that Wiegand's requests could not have been reasonably accommodated.

An employer "can show their good faith in a number of ways, such as taking steps like the following: meet with the employee who requests an accommodation, request information about the condition and what limitations the employee has, ask the employee what he or she specifically wants, show some sign of having considered the employee's request, and offer and discuss available alternatives when the request is too burdensome." Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 317 (3d Cir. 1999). Notably, "[t]he interactive process does not dictate that any particular concession must be made by the employer; nor does the process remove the employee's burden of showing that a particular accommodation rejected by the employer would have made the employee qualified to perform the job's essential functions." Id. Finally, "[i]f an employee insists on a single accommodation that is unreasonable as a matter of law, then the employee will be at fault for the breakdown in the interactive process." Id. at 316 n.7.

Wiegand fails to show either that the Army acted in bad faith or that there were reasonable accommodations that would have allowed him to do his job. To prove it acted in good faith, the Army can point to Colonel Dawson's

11

meeting with Wiegand and his wife, (Doc. 162 ¶ 17), the repeated offers of accommodations, (Id. ¶¶ 28, 50-51) and the open requests for Wiegand to work with it to return him to work, (Doc. 162-1 at ECF 59) ("It is clear there is still room to find the right balance and work toward the details. Recommended the next step be you come in to explore those details and settle concerns. . . . [T]his will not be a one-step transition; it will take time to adjust."). These are precisely the steps an employer is required to take to show it is acting in good faith.

In response, Wiegand argues the Army failed to act in good faith because it never gave him an official position description outlining his essential duties, it did not explain why Wiegand's proposed accommodations were unreasonable, and because the Army never offered the internal transfers to Wiegand. (Doc. 174 at 10-11). None of these are convincing. First, while there may not have been a current, official position description for Wiegand's position, as one of its proposed accommodations, the Army offered either returning him to his previous position description or meeting with his supervisors and go "line by line" in establishing a new one. (Doc. 162-1 at ECF 56). That same letter also explained why some accommodations were unreasonable, stating that it would be too difficult to ensure Wiegand avoided everyone with whom he deemed as having a conflict. (Id. at ECF 55). Further, the internal transfers were ruled out because those "would hold new stressors, the likelihood of supervisory responsibilities, and continuous routine collaboration across both the USAHEC team and external agencies." (Id.).

Thus, those internal positions would potentially put Wiegand back into conflict with the same people he was having issues with and force him to work closely with people outside of his team; both of these are contrary to Dr. Royer's suggested accommodations. (See id. at ECF 161-63).

Even setting aside the question of whether the Army engaged in good faith, Wiegand cannot show he could have been reasonably accommodated. He had two principal accommodation requests: (1) a transfer out of AHEC; and failing that, (2) the ability to choose his own supervisors. (See id. at ECF 560). As for external positions, there were no positions within the Army War College for which Wiegand was qualified, (Doc. 162 ¶ 70), and he has not identified any possible positions elsewhere in the Army that he could have taken, (Doc. 173 ¶ 70). As this court recently explained, a plaintiff's desire to be transferred "does not conjure up vacant, funded roles for which [he] is qualified. . . . An amorphous request cannot suffice to meet [a plaintiff]'s burden of demonstrating that an appropriate role exists, and no reasonable juror could find to the contrary." Bainbridge v. Bondi, No. 3:21-CV-1895, 2025 WL 1920415 *7 (M.D. Pa. July 11, 2025), appeal docketed, No. 25-2434 (3d Cir. Aug. 4, 2025).

When "the summary judgment record is insufficient to establish the existence of an appropriate position into which the plaintiff could have been transferred, summary judgment must be granted in favor of the defendant." Donahue v. Consol. Rail Corp., 224 F.3d 226, 234 (3d Cir. 2000). The internal positions would have been inappropriate as they would have violated Wiegand's other accommodations requests—namely, to avoid certain

supervisors and to minimize working closely with people outside of his team. Wiegand has offered no proof of any other vacant position within the Army for which he which he would have been qualified and so he cannot succeed on this claim.

As to Wiegand's issues with his bosses, he claims "he never requested a particular supervisor." (Doc. 174 at 3). That is plainly not true. In his February 24, 2014, response to Col. Dawson, Wiegand requests "[t]he choice of my rater and senior rater." (Doc. 162-1 at R558). He goes on to name specific people and says that if it could not be any of them, he wanted to be reassigned out of AHEC. (Id.). Unfortunately for Wiegand, the Third Circuit has made clear "[the] request to be transferred away from individuals causing [an employee] prolonged and inordinate stress [i]s unreasonable as a matter of law." Gaul v. Lucent Techs., Inc., 134 F.3d 576, 579 (3d Cir. 1998). Allowing employees the ability to choose who they worked for would "interfere with personnel decisions within an organizational hierarchy," something Congress never intended its anti-discrimination laws to do. Id. at 581. Therefore, Wiegand cannot show his desire to work under different supervisors would have been a reasonable accommodation.

In short, Wiegand's key requests for accommodation were unreasonable as a matter of law. He has failed to show another position existed where he could have been reassigned, and the law does not allow him to pick and choose his supervisors. Thus, even if the Army did not act faithfully—and to be clear, the court finds the Army did act in good faith—Wiegand's accommodation

claims would still fail. <u>Donahue</u>, 224 F.3d at 233 (quoting <u>Willis v. Conopco,</u>

<u>Inc.</u>, 108 F.3d 282, 285 (11th Cir.1997)); <u>Taylor</u>, 184 F.3d at 317 n.7.

**IV.    Conclusion**

  The record before the court establishes the Army acted in good faith in trying

to accommodate Wiegand and that his proposed accommodations were

unreasonable as a matter of law. Wiegand's additional claims are not grounded in

statute. Therefore, the Army's motion for summary judgment shall be granted, and

an appropriate order shall issue.

           /S/ KELI M. NEARY
           Keli M. Neary
           United States District Judge
           Middle District of Pennsylvania

Dated:  September 23rd, 2025