IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRANDON T. WIEGAND,** | : | CIVIL ACTION NO. 1:17-CV-979 |
| | : | |
| Plaintiff | : | (Judge Neary) |
| | : | |
| v. | : | |
| | : | |
| **DANIEL DRISCOLL, Secretary,** | : | |
| **Department Of the Army,** | : | |
| | : | |
| Defendant | : | |

## MEMORANDUM

Not every seemingly adverse decision by an employer entitles a person to relief. In this action, plaintiff Brandon T. Wiegand asserts defendant Department of the Army's ("the Army") non-selection of him for various positions was the result of discrimination and retaliation. The Army filed a motion for summary judgment to dispose of all of Wiegand's claims. For the reasons that follow, the Army's motion will be granted.

### I. Factual Background & Procedural History[1]

The facts of this case start with Wiegand's time at the Army Heritage and Education Center ("AHEC") where he commenced employment in October 2010.

---

[1] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." M.D. PA. L.R. 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried. Id.

(Doc. 121 ¶ 1). Difficulties arose for Wiegand after a reorganization of AHEC in 2012, resulting in his taking FMLA leave from his position on October 14, 2013. Wiegand v. Driscoll, No. 1:17-CV-979, 2025 WL 2712425, at *1-2 (M.D. Pa. Sep. 23, 2025) ("Wiegand II") appeal docketed No. 25-3068 (3d. Cir. Oct. 27, 2025). He remained on leave until his removal on October 24, 2014. (Doc. 121 ¶ 2). Wiegand asserted in a separate lawsuit that the Army discriminated against him on the basis of his Asperger's disability, and such was the factual reason for his removal from AHEC. Wiegand II, 2025 WL 2712425, at *1. Subsequent to his termination Wiegand applied for several jobs within the Army, but was not hired for any of

---

Wiegand failed to follow this Court's local rules by including additional paragraphs in his responsive statement of facts. See M.D. Pa. L.R. 56.1; (Doc. 161 ¶¶ 200-343). Here, Wiegand filed responses irrelevant to facts alleged in the moving party's motion for summary judgment, and the Court therefore disregards these non-compliant additional paragraphs. See Weitzner, 909 F.3d at 613-14; Cevdet Aksut Ogullari Koll. Sti v. Cavusoglu, No. CV 2:14-3362, 2018 WL 585541, at *3 (D.N.J. Jan. 29, 2018) ("disregard[ing] all statements that do not conform to Rule 56 and Local 56.1."). Additionally, the Court deems Wiegand as admitting to all of the Army's statements where he failed to provide a specific response. See Weitzner, 909 F.3d at 604, 613 ("Where an opposing party fails to object in its answer, those facts in the moving party's statement are considered admitted.").

Unless otherwise noted, the factual background herein derives from the parties' Rule 56.1 statements of material facts. (See Docs. 121, 161). To the extent the parties' statements are undisputed or supported by uncontroverted record evidence, the court cites directly to the statements of material facts.

2

them. (Doc. 121 ¶¶ 6, 9, 11, 46, 62, 70, 83, 90, 94, 99, 106, 136, 147. 153). This opinion will address eleven[2] of those non-selections.[3]

Timing is critical for three of these positions: the museum curator and supervisory museum curator positions in Ft. Bliss, Texas; and the supervisory museum curator position in Ft. Lewis, Washington. Emails were sent to Wiegand informing him of his non-selections on April 16, 2015, and July 22, 2015, respectively. (Doc. 121 ¶¶ 6, 9, 11). Wiegand acknowledged receipt of those emails at some point, but could not specifically recall when. (Doc. 125-2 at 21:25-22:7, 23:14-20, 24:10-15). Wiegand's first contact with the Equal Opportunity Office about possible discrimination was nearly one year later, on May 27, 2016. (Doc. 121 ¶ 12).

---

[2] In the amended complaint initiating this action, Wiegand alleges he applied to twenty-four positions for which he was qualified, but ultimately did not get any job. (Doc. 32 ¶ 10). This court, in a prior order, dismissed with prejudice the claims regarding eleven of these non-selections. (Doc. 52 at 17). Three of positions listed by Wiegand are actually one and the same. (Doc. 121 ¶¶ 57 n.14, 65-66). That means there are eleven non-selections serving as the basis for Wiegand's claims currently pending before the court.

[3] These eleven positions, noted in the format of [position, paragraph of amended complaint identifying the position], are:
   Ft. Bliss Supervisory Museum Curator, 10(b);
   Ft. Bliss Supervisory Museum Curator, 10(c);
   Ft. Lewis Supervisory Museum Curator, 10(h);
   AHEC Museum Curator, Firearms, and Ordinance, 10(i), 10(o), 10(r);
   Carlisle Barracks Supervisory Archivist, 10(n);
   Carlisle Barracks Librarian, 10(p);
   AHEC Library Director, 10(q);
   Carlisle Barracks Supervisory Historian, 10(s);
   Ft. Lee Supervisory Museum Curator, 10(t);
   Ft. Shafter Supervisory Museum Curator, 10(u); and
   Carlisle Barracks Supervisory Librarian, 10(v).
(Doc. 121 ¶¶ 4 n.4, 7 n.5, 10 n.6, 30, n.7, 56 n.13, 57 n.14, 65 n.15, 75 n. 18, 91 n.19, 98 n.20, 105 n.21, 113 n.22, 140 n.23, 151 n.24).

Of the next eight positions, six of them were at the Carlisle Barracks where AHEC was located and where Wiegand was originally employed. (Doc. 121 ¶ 32 n.8). These positions included: museum curator, supervisory archivist, supervisory historian, librarian, supervisory librarian, and library director. (Id. ¶¶ 30, 57, 65, 75, 91, 98, 105, 113). The museum curator job was the same one Wiegand held prior to his removal. (Id. ¶ 30). If he returned to this job, Wiegand would have had the same supervisors as when he left. (Id. ¶¶ 30, 35); see also Wiegand II, 2025 WL 2712425 at *6. This fact is notable because his requests for accommodation before his resignation were either to be transferred out of AHEC, (request for a new position), or, if that was not possible, to have new supervisors. Wiegand II, 2025 WL 2712425, at *5.

Regarding the other two positions, it is undisputed that Wiegand "lacked work experience in managing a complex archival program" and "did not have the training, education, or experience to perform a [sic] GS12 Supervisory Archivist." (Doc. 121 ¶¶ 81-82). For the historian position, it is also undisputed that no candidate who applied was hired, including Wiegand, because no candidate was "experienced and capable of leading a large organization of archival specialists." (Id. ¶¶ 94-95). Turning now to the non-director librarian positions, Wiegand was found to be unqualified because he did not have "three years of graduate education in Library Science" or "any experience cataloging library materials according to the Anglo-American Cataloging Rules 2nd edition." (Doc. 121 ¶¶ 99, 100, 101, 106-08).

The library director candidates were evaluated by a committee where each member scored each candidate. (Doc. 121 ¶¶ 126-27). Wiegand was ranked as unqualified by every member of the panel, at least one of whom was unfamiliar with Wiegand's disability or EEO actions. (Doc. 121 ¶¶ 133, 137). Further, there were no discussions of Wiegand's disability or EEO actions amongst the full committee during their hiring considerations. (Doc. 121 ¶¶ 138-39).

Regarding the remaining positions, the Fort Lee, Virginia position was advertised as open to either grade 12 or 13 level candidates, (Doc. 121 ¶ 140), and the Fort Shafter, Hawaii position was open only to a grade 13 level. (Id. ¶ 151). Wiegand did not possess the background and experience to qualify for the grade level 13 position. (Id. ¶¶ 143, 153-55). He was ranked ninth out of ten candidates for the Fort Lee position. (Id. ¶ 147). Also, for the Fort Lee position, the hired candidate was hired at a grade 13 level. (Id. ¶ 145).

## II. Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is appropriate if the "moving party shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is material if resolution of it "might affect the outcome of the suit under the governing law" and genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Mall Chevrolet, Inc. v. General Motors LLC, 99 F.4th 622, 631 (3d Cir. 2024) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). When considering a

motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. Tolan v. Cotton, 572 U.S. 650, 657 (2014) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970)). The court's duty is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 242-43.

There are "two closely related methods for a movant to succeed at summary judgment." Mall Chevrolet, 99 F.4th at 630. "First, under the standard approach, the moving party may produce material facts, established as genuinely undisputed, that entitle it to judgment as a matter of law." Id. (citing FED. R. CIV. P. 56(a)). "Second, under the Celotex approach, a moving party may instead demonstrate that the nonmoving party has not made 'a showing sufficient to establish the existence of an element essential to that party's case *on which that party will bear the burden of proof at trial.*'" Id. (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).

The nonmoving party can defeat a motion for summary judgment by producing evidence to establish a genuine issue of material fact. Anderson, 477 U.S. at 256. The nonmoving party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Id. The party "must do more than simply show that there is some metaphysical doubt as to the material facts. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477

U.S. at 252. Moreover, if the nonmovant's version of disputed facts is "blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007).

Federal Rule of Civil Procedure 56(c) requires movants and nonmovants alike to support factual assertions by "citing to particular parts of materials in the record" or otherwise "showing that the materials cited do not establish the absence or presence of a genuine dispute." FED. R. CIV. P. 56(c). Rule 56(e) allows the court to deem undisputed any fact not properly countered by record evidence. See FED. R. CIV. P. 56(e)(2). Local Rule of Court 56.1 undergirds these principles by requiring Rule 56 motions to "be accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." M.D. PA. L.R. 56.1. Local Rule 56.1 further requires the nonmovant to file a responsive statement identifying genuine issues to be tried and mandates that both parties' submissions "include reference to the parts of the record that support the statements." Id.

This Court has wide discretion to sanction noncompliance with local rules, including Local Rule 56.1, which serves the important purpose of organizing the summary judgment record and facilitating efficient disposition of Rule 56 motions. See Weitzner v. Sanofi Pasteur Inc., 909 F.3d 604, 613-14 (3d Cir. 2018). Permissible sanctions for failure to strictly comply with Local Rule 56.1 include striking nonresponsive statements of fact or deeming a moving party's statement to

be unopposed when not properly controverted. See id.; see also FED. R. CIV. P. 56(e); M.D. PA. L.R. 56.1. In resolving the instant motion, this Court has reviewed the parties' statements and has independently considered the entire record.

### III. Discussion

"Before a federal employee can bring federal suit for alleged discrimination under Title VII of the Civil Rights Act of 1964, the individual must first exhaust his administrative remedies." Wiegand v. Esper, No. 1:17-CV-979, 2018 WL 11381484, at *3 (M.D. Pa. Sept. 13, 2018) ("Wiegand I"). The first step in the administrative process is to initiate contact with an EEO counselor "within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." Id. (quoting 29 C.F.R. § 1614.105(a)(1)). Wiegand's first contact with an EEO counselor was on May 27, 2016. (Doc. 121 ¶ 12). This means he can only bring claims from adverse decisions which occurred on or after April 12, 2016. Wiegand I, 2018 WL 11381484, at *3.

The court previously dismissed some of Wiegand's claims for untimeliness and reserved ruling on others pending completion of discovery. Id. at *4-5. Upon review of a completed record, it is clear that for the Texas[4] and Washington[5] listings, Wiegand was too late. The latest email concerning

---

[4] Positions (b), (c).

[5] Position (h).

his non-selection for this trio of positions was sent on July 22, 2015. (Doc. 121 ¶ 11). This is almost nine months before the April 2016 deadline.

Wiegand offers two reasons for why his claims regarding these positions should be considered timely. First, he claims the record does not show that notifications were sent on the dates the Army claims and there is no support he received them on those dates. (Doc. 160 at 15). Looking at the record, the Army sent Wiegand notices by email of his non-selection for the Texas and Washington positions April 16, 2015, and July 22, 2015. (Doc. 121 ¶¶ 6, 9, 11). Further, Wiegand acknowledged that he received the emails in question. (Doc. 125-2 at 21:25-22:7, 23:14-20, 24:10-15). Wiegand also does not offer any alternative means by which he learned of his non-selections for these positions. Given that, it would defy all reason to assume Wiegand had not viewed these emails in the nearly nine months between when he received the latest one to his April 12, 2016, deadline. Without any reason to suspect otherwise, Wiegand is considered to have constructive notice of these non-selections before the April 2016 deadline.

Wiegand also argues the deadline should be extended because he only learned about the possible discriminatory intent behind these non-selections at a later date. (Doc. 160 at 12-13); Wiegand, 2018 WL 11381484 *4. As this court has previously opined: "the [deadline] begins to run from the 'effective date of the [personnel] action,' with an extension available if the Plaintiff did not know that the action *had occurred*. Whether the Plaintiff knows the action has

9

occurred is not equivalent to whether the Plaintiff knows the action was *discriminatory*." Wiegand, 2018 WL 11381484 *4 (second alternation in original). This remains true here—Wiegand's non-selection is the "personnel" action which triggered the tolling, not when he felt that the action was possibly discriminatory as he alleges.

Accordingly, Wiegand's May 27, 2016, contact with the EEO office is simply too late to allow him to pursue his claims on the Texas and Washington positions, and summary judgment is granted to the Army on the positions listed at 10(b), (c), (h) of his complaint.

As to Wiegand's claims regarding the remaining eight positions, to establish a prima facie claim of discrimination under the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 701, *et seq.*, he must show, "(1) that he has a disability, (2) that he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer, and (3) that he was nonetheless terminated or otherwise prevented from performing the job." Donahue v. Consolidated Rail Corp., 224 F.3d 226, 229 (3d Cir. 2000) (quoting 29 U.S.C. § 794(a)). If a prima facie claim is made, courts then apply the McDonnell Douglas burden shifting framework. Wishkin v. Potter, 476 F.3d 180, 185 (3d Cir. 2007). An employer must "articulate some legitimate, nondiscriminatory reason for the employment action" and if they do so, a plaintiff must then show this proffered reason was pretextual. Id.

To make a prima facie claim of retaliation under the RA, a plaintiff must prove that: "(1) [he] engaged in activity protected by Title VII; (2) the employer took an adverse employment action against [him]; and (3) there was a causal connection between [his] participation in the protected activity and the adverse employment action." Moore v. Philadelphia, 461 F.3d 331, 340-41 (3d Cir. 2006). On the discrimination claim, the Army does not dispute that Wiegand had a disability or that he suffered adverse actions. (Doc. 120 at 16). As for the retaliation claims, the Army does not dispute that Wiegand engaged in a protected activity or that he suffered adverse actions. (Id. at 18).

Therefore, the key questions now are whether Wiegand was qualified for any of the positions of which he applied and was not hired, and whether there was a causal connection between his EEO activity and his non-selections. In this case, the analyses for these questions merge in that if an individual is not qualified for a position, it stands to reason that one would not be hired for that position. Stated differently, if the reason for Wiegand's non-selections is his lack of qualification, then his EEO activity cannot constitute a but-for cause for his non-selection. See Univ. of Texas Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 360 (2013) ("Title VII retaliation claims must be proved according to traditional principles of but-for causation."). And indeed, Wiegand was not qualified for any of the remaining positions at issue.

As explained in more detail in Wiegand II, "there were no positions within the Army War College for which Wiegand was qualified," including his

11

original position at the root of this action as museum curator[6] at Carlisle Barracks. 2025 WL 2712425, at *6. The court already determined Wiegand cannot show he would have been able to perform his old position at AHEC and so he cannot now claim discrimination and retaliation for failing to be hired back. (Id. at *6).

Similarly, it is undisputed Wiegand was not qualified for the archivist[7] and historian[8] positions at Carlisle. (Doc. 121 ¶¶ 81-82, 94-95). Wiegand's only argument is that discrimination existed because the decisionmakers knew of him and his disability. (Doc. 160 at 26-28). Even if true, it does not change the fact that there is nothing in the record to suggest Wiegand was qualified for these jobs in the first place—a prerequisite to establish a prima facie case for both discrimination and, in Wiegand's case, a necessary ingredient to establish but-for causation for retaliation. Donahue, 224 F.3d at 229; Nassar, 570 U.S. at 360.

The story is the same with the Library Director position.[9] Wiegand does not dispute that every member of the search committee ranked him as unqualified for the role, including some who were unfamiliar with Wiegand and his disability. (Doc. 121 ¶¶ 132-33). He further does not dispute the statement that the committee did not discuss his EEO activity or his disability.

---

[6] Positions (i), (o), and (r).

[7] Position (n).

[8] Position (s).

[9] Position (q).

(Id. ¶¶ 137-39). Wiegand has put forward no evidence showing how he would have been qualified for this position, let alone any facts showing the Army's stated rationale not to hire him was pretextual. Therefore, summary judgment is granted to the Army for this position.

Wiegand also applied for librarian[10] and a supervisory librarian[11] positions at the Carlisle barracks. For both jobs, the Army determined he was unqualified because he lacked any experience cataloging library materials according to the Anglo-American Cataloging Rules 2nd edition. (Doc. 121 ¶¶ 100, 107). Wiegand does not attack the substance of the Army's claims, but rather argues the evidence on which the Army relies is improper. Specifically, he claims the declarant who provided details about these positions and the reasons for his dismissal lacks personal knowledge of these details per the Federal Rules of Evidence. (See Doc. 161 ¶ 11i).

True, the declarant, Michelle Deshong, did not work at the Carlisle Barracks when Wiegand applied for the librarian or supervisory librarian positions. (See Doc. 126 ¶¶ 1-2). Yet, she is a Human Resources Specialist and is "familiar with the Army's employment application processing and employee notifications associated with any such employment application." (Id. ¶¶ 1, 3). When discussing the details surrounding Wiegand's non-selections for the librarian and supervisor librarian positions, she relied on the employment

---

[10] Position (p).

[11] Position (v).

records generated for those positions. (See id. ¶¶ 38-43, 49-54). A declarant can develop personal knowledge by reviewing records on matters with which she would be familiar. See Klosterman v. Discover Prods. Inc., 752 F. Supp. 3d 470, 477 (E.D. Pa. 2024). As a Human Resource Specialist, Deshong can review documents and offer testimony based on them. Because Wiegand has no objections to the underlying documents themselves, Deshong's declaration is properly before the court and establishes Wiegand was not qualified for the librarian or supervisory librarian positions.

Wiegand had applied for two supervisory museum curator positions, one in Virginia[12] and the other in Hawaii.[13] Here too, Wiegand has not offered any reason to support his assertion that he was qualified for these positions. It is undisputed that a hiring panel ranked Wiegand ninth out of ten applicants for the Virginia position, (Doc. ¶ 147), and he did not have the specialized experience needed for the Hawaii position. (Id. ¶ 155). As such, he failed to make a prima facie showing of discrimination or retaliation for these positions.

Finally, the court concludes by noting that *even if* Wiegand were able to make a prima facie case of discrimination and retaliation, the Army has shown it had a legitimate reason for Wiegand's non-selections: either there were other, more qualified candidates or he simply was not qualified for the job for which he applied. Wiegand points to no evidence showing the Army's

---

[12] Position (t).

[13] Position (u).

evaluation of his skills and abilities for the various positions was incorrect. Thus, Wiegand cannot point to any evidence to convince a factfinder the Army's proffered reasons for not hiring him was pretextual. See Wishkin, 476 F.3d at 185; Moore, 461 F.3d at 342.

## IV.   Conclusion

Wiegand does not present a triable case on any of his non-selection claims. For three of them, Wiegand brought suit too late and so claims regarding those positions are time barred. For the rest, Wiegand failed to show he was qualified for the positions and, as a result, he cannot sustain claims of discrimination or retaliation. Therefore, the Army's motion for summary judgment shall be granted.

/S/ KELI M. NEARY
Keli M. Neary
United States District Judge
Middle District of Pennsylvania

Dated:    October 30th, 2025